UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEDRICK LEE,

        Petitioner,

v.                                Case Number: 07-CV-14392
                                    Honorable Patrick J. Duggan

CARMEN PALMER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS
CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on June 3, 2010.

PRESENT: HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Petitioner, Shedrick Lee, a state inmate currently incarcerated at the Michigan

Reformatory in Ionia, Michigan, has filed a pro se petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. An Oakland County Circuit Court jury convicted Petitioner

of conspiracy to deliver or possess with intent to deliver 650 or more grams of a controlled

substance, Mich. Comp. Laws §§ 333.7401(2)(a)(i), 750.157a ("conspiracy"). The trial court

sentenced Petitioner to thirty to sixty years in prison. Petitioner asserts that his constitutional

rights were violated during the trial, sentencing and the appeal. For the reasons set forth

below, this Court denies the petition and dismisses it with prejudice.

**I. Factual and Procedural Background**

The Lee family, headed by brothers Roderick and Nathaniel Lee, operated a long-running drug dealing enterprise which was headquartered in Pontiac, Michigan. Petitioner Shedrick Lee, brother to Roderick and Nathaniel, was a runner for the Lee organization who frequently traveled out of state to obtain supplies of controlled substances to be sold in Michigan. The state indictment alleged that the three Lee brothers along with Demar Garvin, Louis Laws, Johnny Stanley, and Menion Stimage conspired to violate state drug laws from 1985 to 1998. Prior to trial, Petitioner filed a motion to quash the indictment. He argued that there was insufficient evidence to bind him over on the conspiracy charge because of alleged weakness of the testimony of the primary witness tying him to the conspiracy, Petitioner's nephew Eric Lee. Petitioner also argued that Double Jeopardy protections barred the state prosecution because he had already pled and been convicted in federal court in Pennsylvania for possession with intent to distribute cocaine. Mot. Tr. at 3-4 (Oct. 6, 1999). On October 6, 1999, the trial court denied in part and granted in part the motion. The court rejected the double jeopardy argument. *Id.* at 8. The court, finding Eric Lee's testimony "incompetent" and concluding that the state failed to prove "the nexus for the agreement necessary for the conspiracy count," however, dismissed the action against Petitioner without prejudice. *Id.* at 9.

On appeal the Michigan Court of Appeals reversed. It found that the trial court incorrectly substituted its judgment for that of the district court that had conducted the preliminary examination. *People v. Lee*, No. 223376 (Mich. Ct. App. Oct. 31, 2000). The Court of Appeals held, "[Eric] Lee's credibility was not an issue for the trial court to resolve

once the district court found [Eric] Lee's testimony credible and sufficient to support a bindover." *Id.* The appellate court remanded the case for trial. *Id.*

In 2001, Petitioner was tried jointly before a single jury along with co-conspirators Roderick Lee and Demar Garvin. The Michigan Court of Appeals set forth the facts pertinent to Petitioner's convictions as follows:

> Defendants' convictions arise from allegations that, from 1985 through 1998, they, along with other family members and associates, engaged in a long-term, widespread cocaine and heroin trafficking conspiracy in Michigan and, at times, transported drugs from out of state. Roderick Lee and his brother Nathaniel Lee allegedly led and equally controlled the purported Lee family organization. Shedrick Lee, another Lee brother, allegedly transported large quantities of drugs from out of state for the organization, although another codefendant, Joe Abraham, was allegedly the organization's primary supplier. Roderick Lee and Nathaniel Lee, in turn, allegedly supplied numerous individuals, including Garvin, who sold to third parties.

> Helen Alexander testified that she purchased cocaine from Roderick Lee, Shedrick Lee, and Nathaniel Lee. According to Alexander, for six months in 1987, she allowed Nathaniel Lee to use her house to "cook up" and sell drugs, in exchange for drugs and money. Alexander stated that in 1987 and 1988, she bought crack cocaine from Shedrick Lee and that in 1989 and 1990 she bought approximately three grams of crack cocaine from Roderick Lee bimonthly. Alexander testified that she observed Roderick Lee give drugs to another woman in exchange for shoplifted items. Alexander indicated that she participated in several drug transactions with Roderick Lee at various Pontiac houses owned by the Lee brothers.

> Ralph McMorris testified that, in the mid-1980s until the mid-1990s, he bought cocaine from Roderick Lee and Nathaniel Lee who were major drug dealers in Pontiac. McMorris stated that he typically bought smaller quantities from street sellers but that if he wanted larger quantities, the street sellers went to Roderick Lee or Nathaniel Lee. . . .

> LaMark Northern testified that he first received cocaine from Roderick Lee in 1987 or 1988, and also received cocaine from Garvin who purchased his cocaine from Roderick Lee and others. Northern said that on one occasion,

in approximately 1989, he bought half a kilogram of cocaine from Roderick Lee for $14,500. According to Northern, for years, beginning in approximately 1993, he routinely received cocaine and heroin from Roderick Lee and Garvin, totaling more 650 grams, that he broke down into smaller quantities and sold to third parties in the Pontiac area. Northern testified that Roderick Lee and Garvin supplied him with drugs until he was arrested.

. . . .

Eric Lee, who is the nephew of Shedrick, Roderick, and Nathaniel Lee, testified that he began working for Roderick Lee in 1989, and continued selling cocaine and heroin for his uncles until 1996. Eric Lee testified that Roderick Lee and Nathaniel Lee led the Lee organization and were equally in control. According to Eric Lee, in 1989 Nathaniel Lee lived with Eric Lee's mother and kept more than a kilogram of cocaine in their apartment. Eric Lee stated that when he was fourteen years old, he began stealing portions of the cocaine to sell. He said that after his activities were discovered, Roderick Lee began supplying him weekly with cocaine to sell. Eric Lee testified that he initially began with half-ounce amounts that eventually grew to over half a kilogram.

. . . .

Eric Lee stated that, over the years, he observed large quantities of drugs being delivered to Roderick Lee and Nathaniel Lee. He testified that he observed Roderick Lee and one Joe Abraham together and believed that the delivery individuals were "running" for Abraham. Eric Lee indicated that Shedrick Lee also obtained cocaine for the organization from other states. Eric Lee noted that Shedrick Lee had urged him to obtain his driver's license, which he believed was for drug trafficking purposes. Eric Lee indicated that, on one occasion, Shedrick Lee offered him $5,000 to accompany him to New York City to purportedly obtain drugs.

Eric Lee testified the he was supplied with more than 650 grams of cocaine for sale and distribution to third parties. Eric Lee indicated that Roderick Lee also supplied drugs to several other people . . . .

Over the years, defendants had several police contacts. In June 1987, an undercover officer twice bought cocaine from Shedrick Lee for $125 and $250. After each buy, the officer inquired about purchasing a larger amount

of cocaine, and Shedrick Lee replied that he would receive a large shipment in about a week.

> . . . .

In October 1994, Pennsylvania police stopped a car for erratic driving. The driver, Shedrick Lee, falsely identified himself as "Nathaniel Lee," and indicated that he was driving from New York to Detroit. Shedrick Lee was driving Nathaniel Lee's car. A subsequent search of the vehicle revealed nearly three kilograms of cocaine and more than six grams of heroin hidden in a secret compartment underneath the vehicle. The police also confiscated nearly $1,000 from Shedrick Lee and an additional $1,350 from a duffel bag inside the car. A drug enforcement special agent opined that, based on Shedrick Lee's explanation of the transaction, he was a courier for a larger drug organization, and had a previous relationship with his out-of-state source. Eric Lee testified that the cocaine found in the car was a delivery for Roderick Lee and Nathaniel Lee and that both were very angry that Shedrick Lee was captured because they lost money.

In 1995, [Louis] Laws worked for law enforcement and named Roderick Lee as one of his narcotics suppliers. In January and February 1995, Laws successfully engaged in two controlled buys of a quarter of an ounce of heroin from Roderick Lee.

> . . . .

Antonio James, a drug runner for [competing drug supplier] Steins, testified that he picked up cocaine from Abraham in quantities of between one and three kilograms for a couple of years. According to James, in 1996 he saw a shipment of between twenty and twenty-five kilograms of cocaine delivered to Abraham's house. James testified that, in 1996 or 1997, he heard Abraham brag to Steins that his "Pontiac boys," Roderick Lee and Nathaniel Lee, were selling more drugs than the Steins organization

*People v. Lee*, No. 248428, 2004 WL 2914207, at *1-4 (Mich. Ct. App. Dec. 14, 2004).[1]

---

[1]The Michigan Court of Appeals consolidated the appeals of co-defendants Roderick Lee and Demar Garvin with Petitioner's.

The jury found all three guilty of conspiracy to possess with intent to deliver 650 or more grams of cocaine. Petitioner and his co-defendants filed a motion for judgment of acquittal notwithstanding the verdict, or in the alternative for a new trial, based upon allegedly erroneous jury instructions. They argued that the trial court failed to instruct the jury that knowledge of the amount of cocaine was an element of the offense and that the state had to prove the defendants each specifically knew that 650 or more grams of cocaine were involved in the conspiracy to deliver. The trial court agreed and granted defendants a new trial. On the state's appeal, the Michigan Court of Appeals reversed. *People v. Lee*, No. 239233, 2002 WL 31955140 (Mich. Ct. App. Dec. 17, 2002). The appellate court assumed that the jury instructions were erroneous but concluded that the error was harmless. *Id.* at *3-6.

Petitioner filed a direct appeal to the Michigan Court of Appeals and raised the following issues:

I.      The State failed to present sufficient evidence to prove the existence of a conspiracy involving Petitioner beyond a reasonable doubt.

II.     Petitioner is entitled to a new trial because of erroneous jury instructions.

III.    Petitioner is entitled to be re-sentenced by the judge who conducted the trial.

Petitioner's convictions were affirmed. *Lee*, 2004 WL 2914207 at *9-11. Petitioner filed a motion for leave to appeal with the Michigan Supreme Court, raising the same issues he

raised in the Court of Appeals,[2] which was denied. *People v. Lee*, 474 Mich. 868, 703 N.W.2d 812 (Sept. 28, 2005).

Subsequently, Petitioner filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.502. He argued that 1) there was insufficient evidence to support his conviction; 2) the conviction violated his Double Jeopardy protections in light of a related federal drug possession conviction; 3) his trial counsel was constitutionally ineffective; 4) his sentence constituted cruel and unusual punishment; and 5) his appellate counsel was constitutionally ineffective—Claims IV through VIII in the present habeas petition. The trial court rejected these claims because Petitioner failed to show cause for failing to raise the claims in his direct appeal and failed to demonstrate prejudice from the problems alleged in his claims, as required by Michigan Court Rule 6.508(D)(3). *People v. Lee*, No. 99-166152 (Oakland County Cir. Ct. Nov. 17, 2006).

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lee*, No. 275281 (Mich. Ct. App. Jun. 6, 2007). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which it denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lee*, 480 Mich. 890, 738 N.W.2d 748

---

[2]Petitioner unsuccessfully attempted to raise an additional issue concerning the admission of the preliminary examination testimony of Eric Lee in an untimely supplemental pro se brief in the Court of Appeals and in his pro se leave application to the Michigan Supreme Court. Petitioner subsequently raised the same issue in a post-conviction motion for relief from judgment.

(2007).  Petitioner now seeks the issuance of a writ of habeas corpus on the same grounds he raised in the state courts.

## II.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413, 120 S. Ct. at 1523.  A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in

light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

## III. Discussion

## A. Sufficiency of the Evidence

Petitioner argues in Claim I that the prosecution presented insufficient evidence to sustain his conviction. Specifically, he asserts that the state failed to carry its evidentiary burden in proving that he entered into an agreement with his alleged co-conspirators. He argues that his admitted bust and conviction for possession of nearly 3000 grams of cocaine in Pennsylvania had nothing to do with his brothers' drug sales in Michigan. The Michigan Court of Appeals rejected this argument:

> (2) Legal Standards
> To support a conviction for conspiracy to deliver a controlled substance, the prosecution must prove that
>
> > (1) the defendant possessed the specific intent to deliver the statutory minimum as charged; (2) his coconspirators possessed the specific intent to deliver the statutory minimum as charged; and (3) the defendant and his coconspirators possessed the specific intent to combine to deliver the statutory minimum as charged to a third person.
>
> A conspiracy is a voluntary, express, or implied mutual agreement or understanding between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. To prove the intent to combine with others for an unlawful purpose, it must be shown that the intent, including knowledge, was possessed by more than one person. For intent to exist, the defendant must know of the conspiracy, know of the objective of the conspiracy, and intend to participate cooperatively to further that objective. Direct proof of a conspiracy is not essential; rather, proof may be derived from the circumstances, acts, and conduct of the parties, and inferences may be made because such evidence sheds light on the coconspirators' intentions.

(3) Applying The Legal Standards

We conclude that, viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude that the conspiracy was proven beyond a reasonable doubt. The evidence, if believed, indicated that Shedrick Lee and his brothers, Roderick Lee and Nathaniel Lee, knowingly cooperated with others to further a drug trafficking scheme to possess and deliver numerous kilograms of cocaine. There was evidence that Shedrick Lee went out of state to pick up cocaine for the organization and, on one occasion, offered Eric Lee $5,000 to accompany him to New York City. In 1994, Shedrick Lee was arrested in Pennsylvania, en route to Michigan, while driving Nathaniel Lee's car. A search of the vehicle revealed nearly three kilograms of cocaine and more than six grams of heroin hidden in a secret compartment underneath the vehicle. A jury could reasonably infer that the amount of cocaine at issue was not for personal use, but intended for distribution to third parties. The police also confiscated nearly $1,000 from Shedrick Lee, and an additional $1,350 from a duffel bag inside the car. A drug enforcement special agent opined that Shedrick Lee was a courier for a larger drug organization, and had a previous relationship with his out-of-state source. There was testimony that Roderick Lee and Nathaniel Lee were angry that Shedrick Lee was caught because they lost money. There was also evidence that Shedrick Lee twice sold cocaine to an undercover officer and each time indicated that he would soon receive a large delivery of drugs and could sell larger amounts.

Although Shedrick Lee asserts that the evidence was insufficient to establish his participation in a conspiracy, the jury was entitled to accept or reject any of the evidence presented. As previously indicated, we will not interfere with the jury's determination of the weight of the evidence or the credibility of the witnesses. Moreover, a prosecutor need not negate every reasonable theory of innocence, but must only prove his own theory beyond a reasonable doubt in the face of whatever contradictory evidence the defendant provides. In sum, viewed in a light most favorable to the prosecution, the evidence was sufficient to sustain Shedrick Lee's conviction of conspiracy to deliver or possess with intent to deliver 650 or more grams of a controlled substance.

*Lee*, 2004 WL 2914207 at *10 (footnotes omitted).

The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt." *Fiore v. White,* 531 U.S. 225, 228-29, 121 S. Ct. 712, 714 (2001). Sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

Based upon the evidence presented at trial, this Court finds that a rational juror could have found that Petitioner entered into an agreement to further the conspiracy for the reasons given by the Michigan Court of Appeals. The court's factual findings are entitled to a statutory presumption of correctness. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) ("This presumption of correctness also applies to factual findings made by a state appellate court based on the state trial record."). Petitioner argues, meanwhile, that the only conclusion one can draw from the evidence is that he was acting alone and not in concert with his brothers when he was arrested in Pennsylvania. Though Petitioner offers different ways to interpret the evidence that would produce a different outcome, he does not offer clear and convincing evidence that the court's factual findings were wrong. *See* 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Viewed in the light most favorable to the prosecution, there was ample evidence from which to find Petitioner acted as a courier for the Lee family drug organization, which sent Petitioner out of state to purchase large quantities of cocaine for sale and distribution in Pontiac, Michigan, by

Nathaniel and Roderick Lee. Because the state court decision was neither contrary to federal law nor based upon an unreasonable determination of the facts in light of the evidence presented, Petitioner is not entitled to habeas relief on Claim I.

## B. Jury Instructions

Petitioner next claims that he was denied his constitutional right to a properly instructed jury because the state trial court failed to instruct the jury that the state had to prove each defendant had the specific intent to conspire to deliver 650 or more grams of cocaine.[3] In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show that, taken as a whole, they were so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* at 72-73, 112 S. Ct. at 482 (quotation omitted). A petitioner challenging an omitted instruction has an even heavier burden than if he challenges an erroneous instruction because an omission is "less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730, 1737 (1977). Indeed, the Supreme Court has specifically found that "a jury instruction that omits an element of the offense[] differs markedly from the constitutional violations [it has] found to defy harmless-error review." *Neder v. United States,* 527 U.S. 1, 8, 119 S. Ct. 1827, 1833

---

[3]Respondent asserts that Petitioner procedurally defaulted this claim. Respondent overlooks the fact that Petitioner properly raised this claim in a motion for a new trial and that both the trial court and appellate court addressed the claim's merits. Petitioner has properly raised and exhausted the claim.

(1999).   The instructions at issue in the present case – which the Court assumes failed to include instruction that knowledge of the statutory minimum amount of drugs was an element of the offense – fits comfortably within the category of instructional errors subject to harmless error review.  *Id.* at 10, 119 S. Ct. at 1834.

As noted above, the Michigan Court of Appeals addressed this issue when the state appealed the trial court's grant of a new trial for the allegedly faulty jury instruction:

> The prosecution in the present case argues that, when examining the jury instructions as a whole, the juries were properly instructed that the prosecution must show that each defendant had knowledge of the amount of cocaine involved in the transaction.  The trial court in the present case instructed the juries on the elements of conspiracy to possess with intent to deliver 650 or more grams of cocaine, possession with intent to deliver 650 or more grams of cocaine, and unlawful delivery of a controlled substance.  In the possession with intent to deliver 650 or more grams of cocaine and unlawful delivery of a controlled substance instructions, the trial court instructed the juries that the substances must have been in a mixture that weighed 650 grams or more.  However, in the conspiracy instructions, the trial court did not include the amount of cocaine as an element of the offense.  Furthermore, none of these instructions indicated that defendants had to specifically intend to deliver, not just any amount of cocaine, but 650 or more grams of cocaine. The trial court instructed the juries regarding the specific intent required to be found guilty of conspiracy to possess with intent to deliver 650 or more grams of cocaine as follows:
>
>> The crime of conspiracy to possess with intent to deliver and/or deliver 650 grams of a mixture containing the controlled substance cocaine and/or heroin requires proof of a specific intent, as does each of the lesser included offenses you will subsequently hear.  This means that the prosecution must prove not only that the defendant did certain acts but that he did the acts with the intent to cause a particular result.
>>
>> For the crime of conspiracy to possess with intent to deliver and/or to deliver 650 grams of a mixture containing the controlled substance cocaine and/or heroin, this means that the

prosecution must prove that the defendant intended to agree to possess with intent to deliver or to deliver the cocaine and/or heroin. The defendant's intent may be proved by what he said, what he did, how he did it or by any other facts and circumstances in evidence.

The trial court also gave the following instruction regarding one of the key elements of conspiracy to possess with intent to deliver cocaine . . . :

To determine whether each defendant was a member of the alleged conspiracy, you must decide whether each individual defendant intentionally joined with anyone else to commit the crime of possession with intent to deliver 650 or more grams of a mixture containing the controlled substance cocaine and/or heroin.

. . . .

. . . . [W]e need not determine whether the trial court properly instructed the juries in this case. Even if we were to conclude that the juries were not properly instructed that the prosecution had to prove that defendants specifically intended to deliver a specific amount of cocaine, that error would be harmless.

. . . .

. . . . "A constitutional error is harmless if '[it is] clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"

. . . .

### B. Shedrick Lee

In regard to S. Lee, the evidence demonstrates that he sold cocaine to an undercover officer on two occasions. On both occasions, S. Lee indicated that he would be getting a large shipment of drugs and could sell larger amounts. S. Lee also sold cocaine to Alexander. E. Lee testified that S. Lee was going to other states to pick up shipments of cocaine for R. Lee. On one occasion, S. Lee offered E. Lee $5,000 to drive to New York City with him. In 1994, S. Lee went to New York City to purchase cocaine and have a secret trap door installed on a car. A state trooper stopped S. Lee, searched the car

he was driving, and found 2,980 grams of cocaine and 6.6 grams of heroin in the trap door underneath the car. E. Lee testified that these drugs were meant to be delivered to R. Lee and Nathaniel Lee. E. Lee testified that R. Lee and Nathaniel Lee were angry that S. Lee had been caught with the drugs because they lost money.

. . . .

## IV. Conclusion

In light of this evidence, we conclude that the trial court's alleged error in the jury instructions was harmless beyond a reasonable doubt. The instructions clearly described that the charge against defendants was conspiracy to possess with intent to deliver 650 or more grams of cocaine. The evidence shows that defendants knew that well over 650 grams of cocaine were involved in the conspiracy to deliver and that they all personally delivered well over 650 grams of cocaine. The testimony further shows that defendants conspired together to deliver this amount of cocaine. At trial, the issue in these cases was not whether defendants knew that 650 or more grams of cocaine were involved in the conspiracy, but whether the prosecution's witnesses were credible and whether defendants were involved in the conspiracy to deliver cocaine at all. We conclude that the juries would not have acquitted any of the defendants even if they had been properly instructed that defendants must have specifically intended to conspire to deliver 650 or more grams of cocaine. In light of all of the evidence against them and the nature of the contested issues in these cases, we determine that, when viewing the jury instructions as a whole, the trial court's errors were harmless beyond a reasonable doubt. Therefore, the trial court abused its discretion in granting a new trial for defendants.

*Lee*, 2002 WL 31955140 at *2-6.

This Court will assume, without deciding, that the instructions were erroneous.

Nonetheless, the Court agrees that the alleged error was harmless beyond a reasonable doubt.

As the state appellate court noted, Petitioner did not contest that he was guilty of possessing

nearly 3000 grams of cocaine – well over the 650 gram statutory minimum. He argued that

such possession was unrelated to the drug conspiracy as charged in the indictment. The

15

quantity element omitted from the instructions was supported by uncontroverted evidence.

Petitioner does not suggest that he would offer evidence bearing on the issue of the minimum

650-gram quantity if allowed. Therefore, because the jury verdict would have been the same

absent the error, the erroneous instruction was harmless beyond a reasonable doubt. *Neder*,

527 U.S. at 17, 119 S. Ct. at 1837 ("[W]here a reviewing court concludes beyond a

reasonable doubt that the omitted element was uncontested and supported by overwhelming

evidence, such that the jury verdict would have been the same absent the error, the erroneous

instruction is properly found to be harmless.") The erroneous instruction did not deny

Petitioner a fundamentally fair trial. The Michigan Court of Appeals' decision was neither

contrary to nor an unreasonable application of federal law. Petitioner is not entitled to habeas

relief on Claim II.

### C.  Resentencing

Petitioner next argues that he is entitled to be resentenced because the sentencing

judge was not the judge who tried the case. The Michigan Court of Appeals rejected this

claim because it determined that Petitioner was not entitled to resentencing under state law.

*Lee*, 2004 WL 2914207 at *11. Petitioner does not allege that this claim involves the

violation of a federal constitutional right.

This issue of resentencing was purely a matter of state law. A habeas petitioner's

claim that the trial court violated state law in sentencing raises only issues of state law which

are not cognizable on federal habeas review. *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D.

Mich. 1999). Claim III therefore does not entitle Petitioner to habeas relief.

## D. Claims IV through VIII

### 1. Procedural Default

Petitioner raised Claims IV through VIII in his post-conviction motion for relief from judgment. Respondent argues that these claims are procedurally defaulted because appellate counsel failed to raise them on direct appeal. If a petitioner failed to present federal claims to the state courts in accordance with the state's procedural rules, such claims are procedurally defaulted and federal habeas review is barred. *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000); *see also Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir. 2002) ("The independent and adequate state ground doctrine procedurally bars federal courts from reviewing a habeas claim under § 2254 "when a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.") (quoting *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2553-54 (1991)).

To determine whether a petitioner procedurally defaulted a federal claim in state court, a federal habeas court must determine whether:

> 1) the petitioner failed to comply with an applicable state procedural rule; 2) the last state court rendering judgment on the claim at issue, in fact, enforced the applicable state procedural rule so as to bar that claim; and 3) the state procedural default is an adequate and independent state ground properly foreclosing federal habeas review of the petitioner's federal claim at issue.

*Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004). If under these standards a petitioner is shown to have procedurally defaulted his federal claims in state court, federal habeas review is barred unless the petitioner demonstrates either: "1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law

alleged in his claim, or 2) that a lack of federal habeas review of the claim's merits 'will result in a fundamental miscarriage of justice.'" *Id.* at 551-52 (quoting *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565).

In this case, Petitioner procedurally defaulted Claims IV-VIII in his habeas petition. As to the first element of procedural default, Petitioner failed to comply with Michigan Court Rule 6.508(D)(3)[4] when he filed his post-conviction motion for relief from judgment because the claims raised therein had not properly raised in his earlier direct appeal.[5]

The second element is similarly satisfied. Under this element, the "state judgment" to be analyzed is "the last *explained* state-court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S. Ct. 2590, 2595 (1991). The last state court rendering judgment in Petitioner's state proceedings was the Michigan Supreme Court which denied leave to appeal the trial court's denial of his motion for relief from judgment for failing "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lee*, 480 Mich. 890, 738 N.W.2d 748 (2007). The Sixth Circuit has repeatedly held that identical, formulaic one-sentence orders denying relief in reliance on Michigan Court Rule 6.508(D) constitute

---

[4]Under Michigan law, a court may not grant post-conviction relief to a defendant if, absent a showing of cause and prejudice, the post-conviction motion "alleges grounds for relief . . . which could have been raised on [direct] appeal from the conviction and sentence . . . ." Mich. Ct. R. 6.508(D)(3).

[5]As previously noted, Petitioner attempted to raise his claim concerning the admissibility of Eric Lee's preliminary examination testimony before the Michigan Court of Appeals but it was rejected as untimely. He subsequently attempted to raise this claim before the Michigan Supreme Court, but it denied him leave to appeal, which is not an adjudication on the merits. *Grievance Adm'r v. Lopatin*, 462 Mich. 235, 260, 612 N.W.2d 120, 134 (2000).

"explained" decisions that enforce a state procedural bar to federal habeas review. *See, e.g.*, *Simpson,* 238 F.3d at 407-08; *but see Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (interpreting identical order of the Michigan Supreme Court based upon Michigan Court Rule 6.508(D) as unexplained where lower state court opinion ruled on merits of state prisoner's claims). And even if this Court looked to the state trial court's opinion as the last explained decision, the decision also expressly relied upon Michigan Court Rule 6.508(D)(3) in denying Petitioner's post-conviction motion for relief from judgment, finding that he had failed to establish cause and prejudice for his failure to raise the issues on direct appeal. *People v. Lee,* No. 99-166152 at 10 (Oakland County Cir. Ct. Nov. 17, 2006).

The third prong in the analysis concerns whether the state procedural default is an adequate and independent state ground to prevent federal habeas review of the underlying federal issue. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "It is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Munson*, 384 F.3d at 315 (citing *Simpson*, 238 F.3d at 407-08; *Burroughs*, 282 F.3d at 410)). It is an adequate and independent state ground for precluding federal review because the rule was firmly established and regularly followed at the time of Petitioner's direct appeal, and was actually followed by the Michigan Supreme Court in this case. *Hicks*, 377 F.3d at 557 (citation omitted). The Court therefore concludes that Petitioner procedurally defaulted Claims IV through VIII by failing to raise them on direct appeal.

## 2.  Cause and Prejudice

A petitioner seeking federal habeas review of a procedurally defaulted claim must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law before a federal habeas court will consider the merits of the claim.  *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) (citing *Coleman*, 501 U.S. at 750, 111 S. Ct. at 2565).  The only exception to this rule is when a habeas petitioner can demonstrate that the failure to consider the claim will result in a fundamental miscarriage of justice.  *Id.*

Petitioner contends that his appellate counsel was constitutionally ineffective for failing to raise his other claims on direct appeal.  If Petitioner's position is correct, appellate counsel's ineffectiveness may constitute cause to excuse any procedural default.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  To establish that appellate counsel was ineffective and caused procedural default:

> a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions.  Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.

*Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (quoting *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir.2000)).  Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983). The United States Supreme Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754, 103 S. Ct. at 3314. Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments - those that, in the words of the great advocate John W. Davis, 'go for the jugular,' - in a verbal mound made up of strong and weak contentions." *Id.* at 753, 103 S. Ct. at 3313 (citation omitted). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Nonetheless, appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003); *see also Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764 (2000).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting from his direct appeal the claims subsequently raised in the post-conviction motion. Appellate counsel filed a fifteen-page brief on appeal which raised the first three claims in the present habeas petition. Petitioner

has not shown that appellate counsel's strategy in presenting those claims while omitting others was deficient or unreasonable. Moreover, for the reasons stated by the Oakland County Circuit Court in its opinion and order denying post-conviction relief, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners:"

## I. Sufficiency of the Evidence

First . . ., [t]he Court of Appeals . . . held that, "viewed in the light most favorable to the prosecution, the evidence was sufficient to sustain Shedrick Lee's conviction . . . ."

As he has done throughout his supporting brief, Defendant raises several unrelated claims under the heading of sufficiency of the evidence. He also claims denial of due process and equal protection of the law based on alleged evidentiary errors by the trial court in finding two witnesses "unavailable" and allowing certain evidence read into the record. . . . The Court of Appeals, however, has ruled in at least two co-conspirators' appeals that this Court did not abuse its discretion by concluding that Eric Lee was unavailable under MRE 804(a) or by admitting Eric Lee's prior testimony. *People v. Nathaniel Lee, Jr.,* [No. 245455, 2004 WL 2877319 (Mich. Ct. App. Dec. 14, 2004)]; *People v. Stanley,*[No. 245456, 2006 WL 2683301 (Mich. Ct. App. Sept. 19, 2006)]. Though not strictly the law of the case in this matter, because the admitted testimony and this Court's reason for admitting it were the same in each co-conspirator's trial, this Court finds the Court of Appeals prior rulings instructive: Defendant was not denied his Sixth Amendment right of confrontation.

Defendant also claims that this Court erred by deeming Officer Pittman unavailable and by admitting into evidence investigation reports for June 9 and 11, 1987, on which dates the officer acting undercover made two controlled purchases from Defendant. Officer Pittman was ill and unable to attend the trial and, though he challenges this Court's conclusion, Defendant has submitted no evidence to the contrary. . . . Even if the court did err in admitting the investigation reports into evidence, with the abundance of testimony and evidence produced at Defendant's trial, and as summarized by the Court of Appeals, any error was harmless.

. . . .

## II.  Double Jeopardy

Next, Defendant claims that his federal plea-based conviction of possession with intent to distribute cocaine and the current conspiracy conviction put him twice in jeopardy for the same offense. . . .  "[A] substantive crime and a conspiracy to commit that substantive crime are not the same for purposes of double jeopardy."  *People v. Lee*, [No. 232011, 2001 WL 824463, at *1 (Mich. Ct. App. Jul. 20, 2001], citing *United States v Felix*, 503 US 378, 390-391; 112 S Ct 1377; 118 L Ed 2d 25 (1992). . . .  The Court further noted that the possession with intent to deliver charge did not resolve an issue of ultimate fact in the conspiracy prosecution ands [sic], therefore, the evidence admitted in the earlier proceeding was admissible in the conspiracy prosecution. . . . .  The same holds true here and Defendant was not twice put in jeopardy for the same offense.

## III.  Ineffective Assistance of Trial Counsel

Defendant's next argument simply repeats the arguments addressed above, though now couched in terms of ineffective assistance of counsel. Because there was no error, Defendant cannot show that he was prejudiced by his counsel's allegedly deficient representation. . . .  He also claims that, had trial counsel filed post-conviction motions, it was likely that "Defendant's conviction would have been dismissed."  Defendant fails to identify what type of post-conviction motion he believes his counsel should have filed. This Court notes that trial counsel was successful in bringing a post-conviction motion for a new trial, but that this Court's ruling was reversed on appeal. . . .

In addition, Defendant alleges that his trial counsel was ineffective for failing to interview or to subpoena Marlon Samples. [(Defendant acknowledges . . . that trial counsel informed him that Samples could not be located.)] . . .  Samples was a passenger in the vehicle at the time of the Pennsylvania traffic stop after the New York trip.  *United States v Lee*, 107 F3d 864 [(3d Cir. 1997)]. . . . During questioning, Defendant repeatedly stated that Samples was not involved in the offense and, eventually, the indictment against Samples was dismissed.

Though a failure to call a witness who may have made a difference in the outcome of the trial can constitute ineffective assistance of counsel, . . . Defendant has not shown how Samples' testimony could have made a

difference. Defendant has not established a factual predicate for his ineffective assistance of counsel claim. . . .

## IV. Cruel or Unusual Punishment

Next, Defendant claims that his sentence of thirty to sixty years' imprisonment constitutes cruel or unusual punishment. He was sentenced on February 10, 2003, and argues that this Court should have made "retroactive" application of the amended statutory sentencing for controlled substances convictions that went into effect on March 31, 2003 . . . .

The abolition of the mandatory minimum sentences applicable to controlled substances offenses applies prospectively only. *People v Thomas*, 260 Mich App 450, 458-459; 678 NW2d 631 (2004). Defendant's sentence is valid and he has cited no substantial or compelling reason for finding otherwise. Accordingly he may avail himself of the parole provisions of the revised statute. *Id.*

## V. Ineffective Assistance of Appellate Counsel

Defendant claims that he asked appellate counsel to raise the issues set forth in his motion brief, but that she failed to do so. Because none of the issues raised herein has merit, Defendant cannot show that he was prejudiced by appellate counsel's failure to present the issues on appeal. Counsel is not required to raise meritless issues and Defendant has not overcome the presumption that counsel's decisions regarding which claims to pursue were sound appellate strategy.

. . . .

## Conclusion

The Court of Appeals held that the evidence was sufficient to support Defendant's conviction. Because the evidence was sufficient, and because his sentence is valid, Defendant cannot demonstrate the actual prejudice necessary to establish entitlement to the relief requested. MCR 6.508(D)(3)(b). In addition, there is no merit to his claims of ineffective assistance of counsel. Consequently, Defendant has failed to satisfy either the good cause or the actual prejudice prong of the two-part standard of MCR 6.508(D), and this Court cannot grant the relief requested.

*Lee*, No. 99-166152, at 5-10.

Because the defaulted claims are not "dead bang winners," Petitioner has failed to establish deficient performance under *Strickland* and therefore cannot demonstrate cause for his procedural default of failing to raise Claims IV through VIII on direct review. *See McMeans,* 228 F. 3d at 682-83; *Meade,* 265 F. Supp. 2d at 872. Because Petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533, 106 S. Ct. at 2666. To the extent Petitioner is raising a stand-alone claim of ineffectiveness of appellate counsel it necessarily also fails.

Additionally, Petitioner has not presented any new reliable evidence to support an assertion of innocence which would allow this Court to consider his claims in spite of the procedural default. Because Petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declines to review Petitioner's defaulted claims on the merits. *See Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 654 (E.D. Mich. 2002).

Finally, even assuming that Petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule because his claims would not entitle him to relief. For the reasons stated by the Oakland County Circuit Court in rejecting Petitioner's Claims IV through VIII on post-conviction review, Petitioner has failed to show that his claims have merit. The trial court's determination that the errors alleged in the post-conviction motion would not have altered the outcome of the proceedings is entitled to deference. *Poindexter v. Mitchell*, 454 F.3d

564, 572 (6th Cir. 2006). "[T]he prejudice component of the cause and prejudice test is not satisfied if there is strong evidence of petitioner's guilt and lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). The decision rejecting Petitioner's claims is consistent with federal law and there is strong evidence of his guilt; Claims IV through VIII are thus barred by procedural default and do not warrant relief.

## IV. Certificate of Appealability and In Forma Pauperis Status

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel,* 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the merits of the claims. *Id.* at 336-37, 123 S. Ct. at 1039-40. Similarly,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack,* 529 U.S. at 484, 120 S. Ct. at 1604.

Having considered the matter, the Court concludes that reasonable jurists would not find the Court's assessment of Petitioner's claims or its procedural ruling debatable or wrong. The Court therefore **DENIES** a certificate of appealability on all claims. The Court also concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal as any appeal would be frivolous. *See* Fed. R. App. P. 24(a). The Court therefore **DENIES** leave to proceed in forma pauperis on appeal.

## V.  Conclusion

For the reasons set forth above, the Court concludes that Petitioner is not entitled to habeas relief based on the claims set forth in his petition.

Accordingly,

**IT IS ORDERED** that Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability and Leave to Proceed in forma pauperis on appeal are **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies To:
Shedrick Lee, #372540
Michigan Reformatory Correctional Facility
1342 West Main Street
Ionia, MI 48846
John S. Pallas, Esq.